1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   DENISE SCHMIDT,                        No   C-05-0197 VRW

13              Plaintiff,                        ORDER

14         v

15   CONTRA COSTA COUNTY, et al,

16              Defendants.
    _____/
17

18

19         Plaintiff Denise Schmidt has filed suit against

20   Contra Costa County ("CoCo County"); four Contra Costa superior

21   court judges, namely Laurel Brady, Thomas Maddock, Lois Haight and

22   Barry Baskin (collectively, the "judicial defendants"); and Ken

23   Torre, the chief executive officer of the Contra Costa superior

24   court.  Doc #14 (FAC).  The FAC alleges that CoCo County, the

25   judicial defendants and Torre terminated Schmidt in violation of

26   the United States Constitution, the California Constitution and

27   California public policy.  The judicial defendants and Torre

28   jointly move to dismiss the FAC pursuant to FRCP 12(b)(6).  Doc

United States District Court

For the Northern District of California

#20.  CoCo County separately moves to dismiss the FAC pursuant to FRCP 12(b)(6).  Doc #16.  Schmidt opposes both motions.  Doc ##23, 24.  Based upon the parties memoranda and the applicable law, the court GRANTS the motions to dismiss.

I

The following factual allegations are taken from Schmidt's FAC and are presumed true for the purposes of the present motions:

Schmidt began working as an acting court commissioner for the Contra Costa superior court beginning in 1998.  FAC ¶15.  In or around early 2002, the California State Bar (the "Bar") informed Schmidt that, as a "quasi-judicial member," she was appropriate for "inactive status."  Id ¶19.  Without a request from Schmidt, the Bar switched Schmidt to inactive status and refunded the active status dues she had paid during the previous year.  Id.

In March 2004, Schmidt ran (apparently unsuccessfully) for a position as a Contra Costa superior court judge.  Id ¶14.  On May 15, 2004, Schmidt alleges that Contra Costa superior court adopted a new "personnel rule" requiring all subordinate judicial officers to hold active Bar status (the "new personnel policy").  Id ¶19.  It is undisputed that active court commissioners are subordinate judicial officers within the purview of the new personnel policy.  On May 19, 2004, Schmidt states that she was "advised that a new [personnel] policy had been put into effect * * * by which she was deemed no longer qualified to remain in her position."  Id ¶15.  The FAC does not identify the individual or individuals who "advised" Schmidt regarding the new personnel

2

United States District Court

For the Northern District of California

policy.  At oral argument, counsel for Schmidt stated that a court commissioner not named in the FAC communicated to Schmidt that her employment had been terminated.

At oral argument, the court inquired why Schmidt did not simply pay her bar dues to return to active status.  Counsel for Schmidt informed the court that she offered to return to active status but was informed that the new personnel policy was "retroactive" and thus returning to active bar status would not affect her termination.  Schmidt claims that the new personnel policy was enacted as "a result of her candidacy for a position as Superior Court Judge in the March 2004 election and the fear that she would run in a future election."  Id.

The FAC is scattershot, full of inappropriate legal conclusions, but does appear to allege that CoCo County adopted an "official policy * * * to violate [her] rights" and that this official "policy" was implemented by the judicial defendants when they created the new personnel policy requiring subordinate judicial officers to hold active Bar status.  Id ¶21.  On this basis, presumably, Schmidt seeks to rest CoCo County's liability.  See Monell v Dep't of Social Servs, 436 US 658, 690 (1978) (holding that municipalities can be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers").  According to Schmidt, this official CoCo County policy and the resultant personnel policy were enacted in retaliation for Schmidt's candidacy for a judgeship and to prevent her from running in the next election cycle for such a position.

3

United States District Court

For the Northern District of California

Based upon the above-enumerated events, Schmidt sues CoCo County, Torre and the judicial defendants for (1) "violations of 42 USC § 1983"[1] predicated on the alleged deprivation of her First Amendment right to speak freely and engage in political activity, (2) violating the California Constitution and (3) wrongful termination in violation of public policy.  Id ¶¶4-5.  Schmidt seeks compensatory and punitive damages, an injunction "restoring the status quo" and attorney fees and costs.  Torre is named in his official capacity as chief executive officer of the Contra Costa superior court; Maddock is named both in his individual capacity as well as his official capacity as the presiding judge of the Contra Costa superior court; the remaining judicial defendants are named only in their individual capacities.

All defendants move to dismiss the FAC pursuant to FRCP 12(b)(6).  Doc ##16, 20.

II

FRCP 12(b)(6) motions to dismiss essentially "test whether a cognizable claim has been pleaded in the complaint." Scheid v Fanny Farmer Candy Shops, Inc, 859 F2d 434, 436 (6th Cir 1988).  Although a plaintiff is not held to a "heightened pleading standard," the plaintiff must provide more than mere "conclusory allegations."  Swierkiewicz v Sorema NA, 534 US 506, 515 (2002) (rejecting heightened pleading standards); Schmier v United States Court of Appeals for the Ninth Circuit, 279 F3d 817, 820 (9th Cir

---

[1] "[A]lthough § 1983 serves to ensure that an individual has a cause of action for violations of the Constitution, the statute itself does not provide any substantive rights at all." Davis v Passman, 442 US 228, 239 n 16 (1979) (quotations and alterations omitted).

4

2002) (rejecting conclusory allegations).

Under Rule 12(b)(6), a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Hughes v Rowe, 449 US 5, 9 (1980) (citing Haines v Kerner, 404 US 519, 520 (1972); see also Conley, 355 US at 45-46. Additionally, dismissal under Rule 12(b)(6) may be based on the "lack of a cognizable legal theory." Balisteri v Pacifica Police Dep't, 901 F2d 696, 699 (9th Cir 1990). In determining whether a complaint states a claim, all material allegations in the complaint are taken as true and construed in the light most favorable to plaintiff.  See In re Silicon Graphics Inc Sec Lit, 183 F3d 970, 980 n10 (9th Cir 1999).  But "the court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Sprewell v Golden State Warriors, 266 F3d 979, 988 (9th Cir 2001) (citing Clegg v Cult Awareness Network, 18 F3d 752, 754-55 (9th Cir 1994)).


                              III

     The court addresses CoCo County's motion first.


                              A

     A municipality "may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned and orders.'"  City of St Louis v Praprotnik, 485 US 112, 123 (1987) (quoting Pembaur v Cincinnati, 475 US 469, 480 (1986)).  "In the

United States District Court

For the Northern District of California

5

United States District Court

For the Northern District of California

context of determining whether a municipality [is] liable for certain acts of a city judicial officer, the Ninth Circuit recently explained that 'the crucial factor is whether under state law the acts in question were performed under the municipality's * * * authority.'" <u>Meek v County of Riverside</u>, 982 F Supp 1410, 1414 (CD Cal 1997) (Paez, J) (quoting <u>Eggar v City of Livingston</u>, 40 F3d 312, 314 (9th Cir 1994)). Accordingly, for CoCo County to be liable under § 1983, the judicial defendants, in adopting the new personnel rule, must have been acting under CoCo County's authority or sanction. It is clear they were not.

"'It is undisputed that the [California] Constitution and statutes give the State, <u>not the counties</u>, direction and control over municipal court judges.'" <u>Franceshi v Schwartz</u>, 57 F3d 828, 831 (9th Cir 1995) (quoting <u>County of Sonoma v Workers'</u> <u>Compensation Appeals Bd</u>, 222 Cal App 3d 1133, 1136-37 (1990) (emphasis added)). As one California has explained:

> Under the Constitution and statutes of the State, the State itself retains the authority to administer, control, direct, censure, discipline, remove, retire and admonish judges of the municipal courts. There are no provisions delegating any authority for these functions to the various counties in which municipal court judges sit. In consequence, the <u>counties have absolutely no influence or control</u> over the manner in which a municipal judge performs his or her duties.

<u>County of Sonoma</u>, 222 Cal App 3d at 1137 (emphasis added). Further, as discussed in greater detail below, see *infra* IV, the new personnel policy was promulgated pursuant to authority delegated to superior courts by the California Judicial Council. It is not for nothing that the formal title of the Contra Costa superior court is "The Superior Court of the State of California in

United States District Court

For the Northern District of California

and for the County of Contra Costa."

Under these circumstances, CoCo County cannot be held liable under § 1983 for the judicial defendants' actions, even if those actions coincidentally mirrored the desires of CoCo County. See Eggar, 40 F3d at 316 ("A municipality cannot be liable for judicial conduct it lacks the power to require, control or remedy, even if that conduct parallels or appears entangled with the desires of the municipality."). Hence, regardless of Schmidt's assertion that CoCo County had an official policy directed solely toward figuring out a way to get her fired, CoCo County cannot be liable under § 1983 for the judicial defendants' alleged conduct that obtained this result.

For similar reasons, this defect in Schmidt's theory of CoCo County's § 1983 liability cannot be cured by an allegation that CoCo County, through its county counsel, participated in formulating the new personnel policy. Although the FAC did not so allege, documents produced in the course of discovery do suggest that Mary Ann Mason, deputy county counsel for CoCo County, participated in drafting and commenting on the personnel policy. See Doc #28, Ex 1. Even if the county counsel qualified as or acted at the direction of a final policymaker, Schmidt cannot allege that the new personnel policy was promulgated pursuant to CoCo County's policymaking authority. Although Ms Mason's participation in the formulation of the policy would undercut the proposition that "counties have absolutely no influence or control over the manner in which a municipal judge performs his or her duties," County of Sonoma, 222 Cal App 3d at 1137, because under California law the authority to promulgate the policy in question

United States District Court

For the Northern District of California

lay with the Contra Costa superior court -- an arm of the state --
and not CoCo County, CoCo County cannot be liable under § 1983.
See <u>Eggar</u>, 40 F3d at 314 ("The crucial factor is whether under
state law the acts in question were performed under the
municipality's or the state's authority.").

Accordingly, the court concludes that Schmidt's § 1983
claim against CoCo County is based on an incognizable legal theory
of municipal liability that cannot be remedied by amendment.


                                    B

Schmidt also fails to state a claim against CoCo County
for wrongful termination in violation of public policy. "If [CoCo]
County is not plaintiff's employer, an employment-related lawsuit
cannot proceed against that separate entity," <u>Jones v County of Los
Angeles</u>, 99 Cal App 4th 1039, 1045 (2002), because "[o]nly an
employer can be liable for tortious discharge," <u>Jacobs v Universal
Development Corp</u>, 53 Cal App 4th 692, 704 (1997).

California law makes clear that, at the time she was
terminated, Schmidt was employed by the Contra Costa superior court
-- and by negative implication, <u>not</u> CoCo County. See Cal Const,
Art VI, § 23(c)(1) (providing that, following the consolidation of
municipal and superior courts, "[p]reviously selected officers,
employees, and other personnel who serve the court become the
officers and employees of the superior court"); Cal Gov't Code §
71622(a) ("Subordinate judicial officers shall serve at the
pleasure of the trial court."). Schmidt attempts overcome this
obstacle by asserting that, along with the Contra Costa superior
court, CoCo County was her "joint employer." FAC ¶8. Her

United States District Court

For the Northern District of California

assertion, however, is predicated on facts that do not establish an employment relationship between Schmidt and CoCo County. Specifically, Schmidt alleges that CoCo County performed "essential employer functions" vis-a-vis Schmidt, including "issuing to plaintiff her paycheck; administering tax deductions, pay stubs and other payroll functions; managing plaintiff's employment contract, and at least part of the personnel/human resources function over plaintiff as employee," FAC ¶8, but California courts have refused to recognize that a superior court and a county are "joint employers" where "'[i]t is only in the payment of salary and benefits that the county is involved,'" <u>Jones</u>, 99 Cal App 4th at 1047 (quoting <u>Service Employees Int'l Union v Superior Court</u>, 137 Cal App 3d 320, 326 (1982)).

Because CoCo County was not Schmidt's employer, CoCo County is entitled to dismissal of Schmidt's claim for wrongful termination in violation of public policy.

## C

In light of the court's legal conclusions that CoCo County could not have promulgated the new personnel policy and was not Schmidt's employer, CoCo County is also entitled to dismissal of Schmidt's claims for violations of the California Constitution. Simply put, if CoCo County was not responsible for promulgating or implementing the new personnel policy giving rise to Schmidt's claims, the court cannot grant any relief against CoCo County.

Schmidt alleges that CoCo County's "presence [in this suit] is important in order to effectuate a meaningful remedy." FAC ¶8.  But CoCo County has no power to discipline, censure or

admonish the judicial defendants.  More importantly, even if CoCo County were hypothetically able to remedy the alleged wrongs committed against Schmidt (which it is not), this fact alone does not provide a legal basis for keeping CoCo County in this suit.

D

In sum, CoCo County's motion to dismiss all claims is GRANTED WITH PREJUDICE.

IV

The judicial defendants, all of whom are sued in their individual capacities, move to dismiss the FAC on the ground that they each enjoy legislative immunity.  Doc #20.

"Legislators are entitled to 'absolute common-law immunity against civil suits for their legislative acts, which is parallel to the immunity provided by the Speech and Debate Clause.'"  San Pedro Hotel Co v City of Los Angeles, 159 F3d 470, 476 (9th Cir 1998) (quoting Chappell v Robbins, 73 F3d 918, 920 (9th Cir 1996)).  The doctrine of legislative immunity applies to actions for both damages and injunctive relief.  Spallone v United States, 493 US 265, 278 (1989).  "The privilege is unaffected by allegations of conspiracy, malice or improper purpose * * *."  Traweek v City and County of San Francisco, 659 F Supp 1012, 1030 (ND Cal 1984) (Henderson, J) (citations omitted), aff'd in part, vacated in part on other grounds, 920 F2d 589 (9th Cir 1990).

The Supreme Court has recognized that, on occasion, judges may perform legislative functions (e g, promulgating a code of ethics governing attorneys pursuant to a statutory grant of such

10

**United States District Court**
For the Northern District of California

authority), and that when they do so, they may be entitled to legislative immunity.  <u>Supreme Court of Virginia v Consumers Union of the United States</u>, 446 US 719, 734 (1980) (hereinafter <u>SCV</u>).  The Ninth Circuit has followed the Supreme Court's lead in this area.  See <u>Hirsh v Justices of the Supreme Court of the State of California</u>, 67 F3d 708, 715 (9th Cir 1995) (holding that the justices of the California Supreme Court enjoyed "absolute legislative immunity for actions relating to the promulgation of disciplinary rules").  The judicial defendants make the straightforward argument that they are entitled to absolute legislative immunity because they promulgated the new personnel policy pursuant to a legislative grant of authority, namely Rule 204.2 of the California Rules of Court.  Doc #20 at 3.

Article VI, § 6(d) of the California Constitution establishes the California Judicial Council -- comprised of fifteen state judges and two non-voting court administrators -- and charges the Council with "adopt[ing] rules for court administration, practice and procedure."  Pursuant to this constitutional grant of authority, the Council adopted the California Rules of Court mentioned above.  Rule 204.2 provides, in pertinent part:

Each trial court <u>must</u>:

* * *

(2)  adopt for judges and court personnel an internal operations manual of policies and procedures necessary for the efficient operation and management of the court * * *.

Accordingly, in adopting internal operations manuals of policies and procedures for court personnel (such as adopting a policy that subordinate judicial officers hold active bar status), the judges

11

of the Contra Costa superior court were exercising the "legislative power" granted by the California Constitution to the Judicial Council.

Schmidt argues that the judicial defendants are not entitled to legislative immunity for three reasons.

A

First, Schmidt asserts that because the new personnel policy applies only to subordinate judicial officers of the Contra Costa superior court (as opposed to all subordinate judicial officers in California), the judicial defendants were not exercising "the entire legislative power" of the California legislature.  Doc #24 at 2.  Schmidt's argument, however, is based on a myopic interpretation of the Supreme Court's decision in SCV.

In SCV, pursuant to a statutory grant of authority, the Supreme Court of Virginia was authorized to "promulgate and amend rules and regulations * * * [p]rescribing a code of ethics governing the professional conduct of attorneys-at-law." SCV, 446 US at 721.  To this end, the Supreme Court of Virginia enacted Disciplinary Rule ("DR") 2-102(A) which "prohibited lawyers from being included in legal directories." Id at 725.  The Consumers Union of the United States, which wanted to create a legal services directory to assist consumers in making informed decisions when choosing legal services, brought suit against, among others, the Supreme Court of Virginia and its chief justice, asserting that DR 2-102(A) violated its First and Fourteenth Amendment rights to gather, publish and receive factual information.  Id at 726. Subsequent to the initiation of the lawsuit, the Supreme Court

decided <u>Bates v State Bar of Arizona</u>, 433 US 350 (1977).  In light

of <u>Bates</u>, the Supreme Court of Virginia agreed that DR 2-102(A) was

unconstitutional and agreed to a permanent injunction barring

enforcement of the DR.  Id at 727.  Plaintiff Consumer Union then

moved for costs, including attorney fees, against the Supreme Court

of Virginia and its chief justice.  Id at 728.   The district court

awarded plaintiff Consumer Union its costs and fees.  Id at 728-29.

The Supreme Court of the United States reversed, concluding that

> in this case, the Virginia Court * * * is exercising
> that State's entire legislative power with respect
> to regulating the Bar, and its members are the
> State's legislators for the purpose of issuing the
> Bar Code.  Thus the Virginia Court and its members
> are immune from suit when acting in their
> legislative capacity.

Id at 734.

Schmidt reads Justice White's opinion in <u>SCV</u> as creating

a threshold requirement for the invocation of legislative immunity.

Specifically, Schmidt argues that if a judicial officer does not

exercise the "entire" legislative power of the state of California

on a subject (in this case, "the subject of qualifications for

subordinate judicial officers"), legislative immunity is

unavailable.  Doc #24 at 2.

<u>SCV</u> creates no such threshold.  First, the passage from

<u>SCV</u> relied on by Schmidt begins by stating that "<u>in this case</u>" the

Supreme Court of Virginia was exercising the entire legislative

power of the State of Virginia (i e, enacting a disciplinary rule

that applied state-wide).  This fact simply bolstered the Court's

finding of legislative immunity; it was by no means the dispositive

factor in determining whether legislative immunity applied.

Rather, the Court stated that "the Virginia Court and its members

United States District Court

For the Northern District of California

are immune from suit <u>when acting in their legislative capacity</u>."
SCV at 734 (emphasis added).  Nowhere does Justice White state that
to be acting in a "legislative capacity" a defendant must be
enacting rules that apply state-wide.  Indeed, legislators
periodically enact legislation affecting individual counties and
cities.

Nor does Schmidt's interpretation of <u>SCV</u> find support in
<u>Greater Los Angeles Council on Deafness, Inc v Zolin</u>, 812 F2d 1103,
1108-09 (9th Cir 1987).  In concluding that legislative immunity
was unavailable, the Ninth Circuit reasoned that, unlike <u>SCV</u>, the
defendants in <u>Zolin</u> were not "empowered by a legislative body to
promulgate regulations to implement the legislative will" and the
challenged policy merely "an internal interpretation of how to
implement a statute."  <u>Zolin</u>, 812 F2d at 1108-09.  <u>Zolin</u> in no way
suggests that the availability of legislative immunity depends upon
whether a defendant was exercising the "entire" legislative power
or some lesser quantum of legislative power.  And like the
defendants in <u>SCV</u>, but unlike the defendants in <u>Zolin</u>, the judicial
defendants in this case were empowered to promulgate the policy of
which Schmidt now complains.  The text of the California
Constitution and Rule 204.2 make this very clear.


                              B

Next, Schmidt argues that the judicial defendants were
not acting in a legislative capacity because they "have no
authority to create qualifications for subordinate judicial
officers, whether by means of [Rule] 204.2 or otherwise."  Doc #24
at 2.  According to Schmidt, only the Judicial Council has such

authority pursuant to Cal Gov't Code § 71622.  Id.  Section 71622(c) states that the "Judicial Council shall promulgate the minimum qualifications and training requirements for subordinate judicial officers."  The Judicial Council established such minimum qualification in Rule 6.660 of the California Rules of Court.  Rule 6.660 provides, in pertinent part:

> (b)  [Qualifications]  Except as provided in subdivision (d), a person is ineligible to be a subordinate judicial officer unless the person is a member of the State Bar and:
>
> (1)  Has been admitted to practice law in California for at least ten years * * *; or
>
> (2)  Is serving as a subordinate judicial officer in a trial court as of January 1, 2003.

Seizing upon this language, Schmidt argues that the "subject [of qualifications for subordinate judicial officers] is covered explicitly and exclusively by California Rule of Court 6.660. Defendants' departure from [Rule] 6.660's statewide criteria, through promulgation of a conflicting Contra Costa policy * * *, is an invalid exercise of governmental authority."  Doc #24 at 3.  The court disagrees.

Section 71622(c) provides that the Judicial Council (via Rule 6.660) is charged with establishing only the "minimum qualifications" for a person to be eligible to be a subordinate judicial officer.  In other words, Rule 6.660 creates a floor on subordinate judicial officer qualifications, not a ceiling. Schmidt provides the court with no authority (statutory or otherwise) precluding either the Judicial Council from delegating its authority or a trial court from issuing higher standards for

United States District Court

For the Northern District of California

eligibility as a subordinate judicial officer.  To the contrary, Rule 204.2 grants each trial court the individual power to establish personnel policies and procedures for the management of its court and the judicial defendants appear to have done just that.

C

Finally, Schmidt argues that even if the promulgation of the new personnel rule was an exercise of legislative power by the judicial defendants, the "application of that rule to fire [Schmidt] would remain an administrative act" and legislative immunity does not extend to administrative acts.  Doc #24 at 4 (citing <u>Forrester v White</u>, 484 US 219 (1988), and <u>Cinevision v Burbank</u>, 745 F2d 560, 580 (9th Cir 1984)).

Schmidt's statement of the law is correct; "legislators have absolute immunity when 'they act in their legislative capacities, not in their administrative capacities * * *.'"  <u>San Pedro Hotel Co, Inc v City of Los Angeles</u>, 159 F3d 471, 476 (9th Cir 1998).  "In this circuit, we determine whether an act is legislative by considering two questions:  (1) whether the act involves ad hoc decisionmaking, or the formulation of a policy; and (2) whether the act applies to a few individuals, or to the public at large."  Id (quotations omitted).  Under this rubric, the judicial defendants were acting in their legislative capacities. The creation of the new personnel policy was clearly the formulation of a policy as opposed to an ad hoc decision. Moreover, the policy applies to the public at large:  <u>Anyone</u> who wishes to be employed as a subordinate judicial officer in the

United States District Court
For the Northern District of California

16

1  Contra Costa superior court must hold active bar status.

2      The act of firing of an employee, however, is an

3  administrative act not worthy of immunity.  <u>Forrester</u>, 484 US at

4  229.  The FAC does not specify who actually terminated Schmidt; at

5  oral argument, counsel for Schmidt explained that a court

6  commissioner not named in the FAC informed Schmidt that her

7  employment was terminated.

8      Because the court concludes that the judicial defendants

9  are entitled to legislative immunity, the judicial defendants'

10  motion to dismiss is GRANTED WITH PREJUDICE to all claims

11  predicated on the judicial defendants' involvement in promulgating

12  the new personnel policy.

13

14                              V

15                              A

16      The FAC names Torre and Maddock in their official

17  capacities as chief executive officer and presiding judge,

18  respectively, of the Contra Costa superior court.  FAC ¶¶4-5.

19  Although Maddock is alleged to have collaborated with the other

20  judicial defendants in his individual capacity, Torre's role, if

21  any, in the underlying events is unclear.  The FAC vaguely states

22  that Torre is sued in his official capacity "in connection with

23  causing damage to [Schmidt] by means of the wrongful acts of the

24  remaining defendants."  Id ¶4.

25      Ordinarily, "neither a State nor its officials acting in

26  their official capacities are 'persons' under § 1983."  <u>Will v</u>

27  <u>Michigan Dept of State Police</u>, 491 US 58, 71 (1989).  Under <u>Ex</u>

28  <u>parte Young</u>, 209 US 123 (1908), and its progeny, however, "a state

United States District Court

For the Northern District of California

official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not considered actions against the State.'"  Will, 491 US at 71 n 10 (quoting Kentucky v Graham, 473 US 159, 167 n 14 (1985)).  Conversely, Torre and Maddock cannot be "persons" for purposes of § 1983 insofar as the FAC seeks retrospective (i e, monetary) relief against them.  See Wolfe v Strankman, 392 F3d 358, 364-65 (9th Cir 2004).

Because Schmidt seeks damages in connection with her § 1983 claim without distinguishing among defendants (i e, without specifying that claims for monetary relief are asserted only against defendants named in their individual capacities), FAC ¶37, her § 1983 claim against Torre and Maddock in their official capacities cannot stand.  The court therefore GRANTS defendants' motions to dismiss the § 1983 claim against Torre and Maddock in their official capacities WITHOUT PREJUDICE.

B

"Only an employer can be liable for tortious discharge, and fellow employees cannot be held for liable for tortious discharge on a conspiracy theory."  Jacobs, 53 Cal App 4th at 704; see also Phillips v Gemini Moving Specialists, 63 Cal App 4th 563, 576 (1998).  Thus, it would appear that Schmidt's wrongful termination claim could only be brought against the Contra Costa superior court and not Torre or Maddock.

Schmidt posits that because Torre and Maddock have been named as defendants in their official capacities for purposes of Ex parte Young and § 1983, a claim against Torre and Maddock in their

United States District Court

For the Northern District of California

official capacities is essentially a claim against Schmidt's employer.  Doc #24 at 6.  Although Schmidt's argument is creative, it fails to persuade.  First, Schmidt misconceives the role that <u>Ex parte Young</u>'s "fiction," <u>Seminole Tribe of Florida v Florida</u>, 517 US 44, 174 (1996) (Souter, J, dissenting), plays in her claims against Torre and Maddock in their official capacities.  Specifically, and as already discussed, under <u>Ex parte Young</u>, when a state official is sued in his or her official capacity for prospective relief only, the claim is treated as though it is <u>not</u> brought against the governmental entity itself.  This theoretical point aside, absent any authority supporting Schmidt's attempt to extend <u>Ex parte Young</u> in this manner, the court is constrained to agree with defendants that naming a managerial-type employee in his "official capacity" does not amount to a suit against the employer -- the only individual or entity that can be liable for wrongful termination in violation of public policy.

Given the court's conclusion that neither Torre nor Maddock was Schmidt's "employer" for purposes of her wrongful termination claim, the court need not address defendants' argument that Torre and Maddock are entitled to governmental immunity.  See Doc #20 at 6-8.

Torre and Maddock's motion to dismiss Schmidt's claim for wrongful termination in violation of public policy is GRANTED WITH PREJUDICE.

//

//

//

//

19

United States District Court

For the Northern District of California

VI

In sum, the following claims are DISMISSED WITH PREJUDICE: (1) all claims against CoCo County, (2) all claims against the judicial defendants that are predicated on the judicial defendants' role in promulgating of the new personnel policy and (3) the claim for wrongful termination in violation of public policy against Torre and Maddock in their official capacities. Schmidt's § 1983 claim against Torre and Maddock in their official capacities is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

_____

VAUGHN R WALKER

United States District Chief Judge