IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DENISE SCHMIDT,

       Plaintiff,

       v

CONTRA COSTA COUNTY et al,

       Defendants.

       No   C-05-0197 VRW

       ORDER

In response to the court's order dated January 26, 2006 (Doc #34), plaintiff Denise Schmidt ("plaintiff") filed her second amended complaint ("SAC") against defendants Ken Torre, Thomas Maddock and Laurel Brady. Doc #41. The SAC listed two causes of action: (1) violations of 42 USC section 1983 and (2) violations of rights secured by the California Constitution. Doc #41 at 10-13. The defendants once again move to dismiss. For the reasons set forth herein, the court GRANTS defendants' motion to dismiss with prejudice.

I

Plaintiff initially filed suit against Contra Costa County ("the county"); four Contra Costa superior court judges,

namely Brady, Maddock, Lois Haight and Barry Baskin; and Torre, the chief executive officer of the Contra Costa superior court.  First Amended Complaint ("FAC") Doc #14.  The FAC alleged that the county, the judicial defendants and Torre terminated plaintiff's employment as acting court commissioner (FAC ¶15) in violation of the United States Constitution, the California Constitution and California public policy.

The gravamen of plaintiff's FAC was that defendants adopted a new "personnel rule" requiring all subordinate judicial officers to hold active bar status (the "new personnel policy") and then relied on this policy to terminate plaintiff, who was on inactive status.  FAC ¶21.  A subordinate temporary judicial officer at the time, plaintiff sought to avoid termination by reactivating her bar status but was informed that the new personnel policy was "retroactive," so that returning to active status would not enable her to remain employed.  Doc #34 at 3.  Plaintiff alleged that the new personnel policy was enacted as "a result of her candidacy for a position as Superior Court Judge in the March 2004 election and the fear that she would run in a future election."  FAC ¶15.

On January 26, 2006, the court dismissed with prejudice: (1) all claims against the county; (2) all claims against the judicial defendants that were predicated on the judicial defendants' role in promulgating the new personnel policy; and (3) the claim for wrongful termination in violation of public policy against Torre and Maddock in their official capacities.  Doc #34 at 20.  Plaintiff's section 1983 claims against Torre and Maddock in their official capacities were dismissed without prejudice.  Id.

2

On April 12, 2006, plaintiff filed her SAC, naming as defendants: Torre, in both his individual capacity and official capacity as chief executive officer of the Contra Costa superior court; Maddock, in both his individual capacity and official capacity as presiding judge of the Contra Costa superior court; and Brady, in her individual capacity. Doc #41. The SAC alleges (1) "violations of 42 USC § 1983" and (2) violations of rights secured by the California Constitution. Doc #41 at 10-13.

Defendants move to dismiss the SAC to the "extent that it is inconsistent with the January 26 order," or in the alternative, to strike certain allegations from the SAC to the "extent that it is inconsistent with * * * the January 26 Order." Doc #42 at 2. Defendants do not seek to dismiss plaintiff's claims that application of the personnel policy to her was unfair or retaliatory. Id. Although the court does not find defendants' arguments for dismissal of the SAC persuasive, it grants the motion to dismiss because plaintiff failed to plead adequately that defendants violated her federal Constitutional rights or her state constitutional rights.

II

Defendants Torre, Maddock and Brady seek to dismiss the SAC to the extent that the SAC seeks relief based on defendants' enactment and/or promulgation of the personnel policy at issue. Id. Defendants also seek to dismiss plaintiff's claims that defendants' discretionary act of applying the personnel policy to her violated plaintiff's state constitutional rights. Doc #42 at 2. The court's January 26 order distinguished two types of

3

relevant claims. The first type are claims "predicated on [Maddock and Brady's] involvement in <u>promulgating</u> the new personnel policy." Doc #34 at 17 (emphasis added). The second type, as defendants have correctly understood, are claims "that <u>application</u> of this personnel policy to [plaintiff] was unfair or retaliatory." Doc #42 at 2 (emphasis added). Plaintiff may not re-plead claims of the first type, but has leave to amend claims of the second type.

The arguments on these motions devote considerable space to semantics, in large part due to plaintiff's widespread use of the word "policy" throughout her SAC. Defendants argue that "policy" refers to the new personnel policy and raises first-type claims. Plaintiff counters that, for the purposes of her SAC, "policy" refers to "defendants' policy of retroactive application and enforcement of the new personnel rule to fire plaintiff" (Doc #45 at 14) and permissible second-type claims.

The confusion may be further attributed to plaintiff's erroneous belief that "for 42 USC § 1983 liability to obtain, plaintiff must allege and prove that the relevant practice is widespread enough to have the force of law." Id (citing <u>Davis v City of New York</u>, 228 F Supp 2d 327 (SD NY 2002)). But <u>Davis</u> holds only that "in order for an individual deprived of a constitutional right to have recourse against a <u>municipality</u> under section 1983, she must show that she was harmed by a <u>municipal</u> 'policy' or 'custom.'" Id at 336 (emphasis added)(citing <u>Monell v New York City Dept of Social Svcs</u>, 436 US 658, 690-91 (1978)). Because the county is no longer a party, plaintiff's extraordinary attempts to characterize the retroactive application of the new personnel policy as itself a "policy" serves no useful purpose.

4

In determining whether a complaint states a claim under Rule 12(b)(6), all material allegations in the complaint are taken as true and construed in the light most favorable to plaintiff. See In re Silicon Graphics Inc Securities Litigation, 183 F3d 970, 980 n10 (9th Cir 1999). The court agrees that defendant's motion, in pertinent part, is "flawed by * * * a willful misreading of the [SAC]." Doc #45 at 13. Paragraph 11 of the SAC clearly states that "the SAC does not posit liability on the promulgation of the policy, but rather on the policy's use to fire Schmidt." Moreover, under the 12(b)(6) standard, the court must accept plaintiff's reasonable reading of her SAC. Accordingly, plaintiff may raise claims that do not address the promulgation of the new personnel policy.

In its January 26 order, the court characterized the promulgation of the new personnel policy as legislative and therefore entitled to immunity. The court, however, did not reach whether the decision to apply the new personnel policy retroactively was legislative and likewise immune. If this decision, as plaintiff contends, was "ad hoc" and "applie[d] only to a few individuals," then it was not legislative in nature. San Pedro Hotel Co, Inc v City of Los Angeles, 159 F3d 471, 476 (9th Cir 1998).

Plaintiff claims that application of the personnel policy to her was unfair or retaliatory and in violation of state constitutional rights. Defendants urge the court to dismiss plaintiff's state constitutional claims, arguing that the California Tort Claims Act (Cal Gov't Code § 820.2) immunizes public employees from suit, even for constitutional violations.

Doc #42 at 3. Defendants cite <u>Yee v Mobilehome Park Rental Review Bd</u>, 62 Cal App 4th 1409 (1998), for the proposition that a city is immune, even from federal and state constitutional claims. (Doc #46 at 2) Defendants' argument proves too much. Although the <u>Yee</u> court upheld "the trial court's determination that damages could not be recovered under <u>state statutes</u> because the Board was immune," id at 1427 (emphasis added), the court rejected the Yees' federal constitutional claims on their merits and thus never addressed the applicability of section 820.2 to such claims. Id.

To the contrary, California jurisprudence indicates that claims "based upon the [California] Constitution * * * [are] not subject to the immunities set forth within Government Code section 820.2." <u>Odello Bros v County of Monterey</u>, 63 Cal App 4th 778, 793 (1998). Moreover, while the California Supreme Court has apparently not spoken directly on the issue, its decisions are nonetheless consistent with the aforementioned conclusion.

For example, in <u>Customer Co v City of Sacramento</u>, 10 Cal 4th 368, 392-93 (1995), plaintiff brought common law negligence and inverse condemnation claims under Article I, section 19 of the California Constitution. While plaintiffs did not appeal the lower court's decision holding defendant immune from the <u>negligence claim</u> under section 820.2, the California Supreme Court nonetheless drew a distinction between liability for violating the California Constitution and "the government's potential liability for [negligence]," which "should be evaluated, as it always has been in the past, under the provisions of the Tort Claims Act." <u>Customer Co</u>, 10 Cal 4th at 391. Accordingly, there is no governmental immunity when the right violated is a constitutional right.

6

In order for her claims to go forward, plaintiff still faces the challenge of pleading an actionable violation of her state constitutional rights.  See part II B, <u>infra</u>.  Furthermore, as discussed in the next section, plaintiff must plead a violation of a constitutionally protected federal right in order for her section 1983 claim to go forward.

### A

The court will now turn to plaintiff's section 1983 claims alleging violations of her First and Fourteenth Amendment rights, her Fifth Amendment due process rights and her claim of an unlawful bill of attainder before returning to plaintiff's state constitutional claim.  Even though defendant's motion does not adequately address plaintiff's section 1983 claims, the court <u>sua sponte</u> dismisses these claims.

Plaintiff alleges that defendant violated section 1983 by "conspiring to fire and firing plaintiff in retaliation for her protected free speech and political activities."  Doc #41 at 10.  This allegation fails adequately to plead a section 1983 conspiracy or retaliation claim.

A complaint should not be dismissed for failure to state a claim for relief unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle her to relief.  <u>Conley v Gibson</u>, 355 US 41, 45-6 (1957).  In evaluating a motion to dismiss, the well-pleaded facts in a complaint are accepted as true.  <u>Klug v Chicago School Reform Board of Trustees</u>, 197 F3d 853, 858 (7th Cir 1999)(public employee's complaint asserting free speech retaliation claim found

**7**

defective because it failed to set forth the speech claimed to be protected).

A conspiracy is not itself actionable under section 1983. Rendon v City of Fresno, 2005 US Dist LEXIS 31623 (E D Cal 2005). Rather, plaintiff must demonstrate a conspiracy to violate her constitutionally protected rights. Id. Conspiracy claims, in any event, are subject to a heightened pleading standard in the Ninth Circuit. See Harris v Roderick, 126 F3d 1189, 1195 (9th Cir 1997).

Myers v Dean, 2006 US Dist LEXIS 10770 (S D Ohio 2006), a recent decision by a district court in Ohio, is instructive and bears many similarities to the instant matter. Plaintiff challenged her employer by running for an elected office. She brought suit, alleging that her employment was later terminated in violation of her rights under the First and Fourteenth Amendment. In Myers, as here, plaintiff argued that candidacy for office should be protected speech under the First Amendment. Id. The court granted summary judgment and plaintiff, holding had "no constitutional right to run against her employer and retain her employment." In doing so, the court commented that "whether the decision to terminate plaintiff was bad public policy or otherwise noxious is not a question for this court to decide." Id. The Myers court also granted summary judgment against Myers's Fourteenth Amendment claim because she did not have any protected interest in her continued employment as a deputy clerk. Myers, 2006 US Dist LEXIS 10770.

When government employees speak as citizens on issues of public interest, the First Amendment shields them from any retaliation by their employer. Pickering v Board of Education, 391

8

US 563, 567 (1968). The elements of such a section 1983 retaliation claim are: (1) plaintiff suffered an adverse employment action; (2) the speech involved a matter of public concern; (3) the employee's interest in commenting on matters of public concern outweighed the government employer's interest in promoting efficiency; and (4) the employee's speech motivated the adverse employment action. Johnson v Louisiana, 369 F 3d 826, 830 (5th Cir 2004).

Whether the employee's speech was of public concern presents an issue of law. Connick v Myers, 461 US 138, 148 n7 (1983). This determination is made in light of "the content, form and context of a given statement, as revealed by the whole record." id at 147-48. If the plaintiff's speech does not address a matter of public concern, no further inquiry is necessary. Rankin v McPherson, 483 US 378, 384 (1987). In Klug, the Seventh Circuit affirmed defendant's motion to dismiss plaintiff's First Amendment claim because the court was "struck by the lack of articulation regarding what the matters of public concern were * * *." 197 F3d at 858 (public employee's complaint asserting free speech retaliation claim found defective because it failed to set forth the speech claimed to be protected).

Turning to the specifics of the SAC, plaintiff alleges that defendants violated First and Fourteenth Amendment rights by applying the new personnel policy retroactively in order to retaliate against her for running for a judgeship. Plaintiff satisfies the first element because termination is an adverse employment action. She cannot, however, adequately plead the other elements.

9

1 Plaintiff has not alleged that she engaged in activity
2 that related to matters of public concern.  The associational
3 rights of political parties are fundamental rights, but the right
4 to candidacy is not.  <u>Bullock v Carter</u>, 405 US 134, 142-43 (1972).
5 The United States Supreme Court has never recognized a fundamental
6 right to express one's political views through candidacy.  <u>Myers</u>,
7 2006 US Dist LEXIS 10770.  Laws that burden in a limited fashion a
8 person's rights to participate in politics and to serve as an
9 elected official have survived review under the First Amendment.
10 See <u>Clement v Fashing</u>, 457 US 957 (1982).  In <u>Clement</u>, two sections
11 of the Texas Constitution were challenged for violating the Equal
12 Protection Clause and the First Amendment.  457 US at 960.  The
13 first section prohibited certain officials from holding a seat in
14 the Texas legislature prior to expiration of their terms of office
15 and the second provision, known as the "resign to run" provision,
16 required an official to resign from the current office before he or
17 she could run for an elective office other than the one the
18 official currently held.  id at 960.  The court held that both
19 sections were constitutional.  id at 972.

20 In this case, plaintiff contends that the retroactive
21 application of the new policy violated her political participation
22 rights because it was intended as retaliation for her candidacy for
23 judgeship.  The complaint does not allege that plaintiff lost her
24 position because of her political beliefs.  Rather, the complaint
25 alleges that plaintiff was terminated because of her decision to
26 run for elected office.  Plaintiff alleged that the public concern
27 here is the political accountability of the election process.  Doc
28 #45 at 7.  Yet here, the rule itself is facially and wholly

10

1  unrelated to the candidacy for public office, in contrast to the
2  two provisions in <u>Clement</u>.  The policy here does no more than
3  require subordinate judicial officers to hold active state bar
4  status.  Doc #34 at 3.  Contrary to plaintiff's argument, it does
5  not stop anyone from running for any office nor does it prohibit a
6  broad range of political activities.
7         Plaintiff's argument that the requirement of active bar
8  status conflicts with a judge's ethical responsibility not to
9  engage in the private practice of law also misses the mark.
10 Defendants correctly note that "the policy's requirement of active
11 Bar status does not equate to a requirement that Plaintiff, or any
12 other individual, also engage in private practice."  Doc #46 at 4.
13 Id at 5.  Active state bar members are eligible to practice law,
14 but active law practice is not a requirement for active bar status.
15 State Bar of California Membership Rules, <u>passim</u>.  Morever, whereas
16 judges are specifically exempt from bar membership ("Every person
17 admitted and licensed to practice law in this State is and shall be
18 a member of the State Bar except while holding office as a judge of
19 a court of record," Cal Const art VI, § 9), temporary judges must
20 be "members of the State Bar" (Cal Const art VI, § 21).  Temporary
21 subordinate judicial officer, while not specifically addressed in
22 the state constitution, are more like the latter than the former.
23 Accordingly, plaintiff has pled no issue of public concern about
24 the political accountability of the election process.
25        Further, there is no evidence to suggest that plaintiff
26 was denied equal protection because the new policy was applied
27 unfairly.  Plaintiff does not claim that the policy was applied any
28 differently to other employees.  The complaint does not suggest

11

that plaintiff was the only person affected by the new personnel rule.  On the contrary, plaintiff admits that the policy was applied in an identical fashion to another employee.  Doc #41 at 7.  Plaintiff does not provide any evidence to suggest otherwise that the policy was applied unevenly or unfairly.  Plaintiff's section 1983 retaliation and conspiracy claims are therefore DISMISSED.

Plaintiff makes a further constitutional argument that defendants' actions constitute an unconstitutional "taking of plaintiff's property and liberty interests without just compensation and without due process."  Doc #41 at 11.  Because plaintiff's SAC is ambiguous, the court assumes that plaintiff means to contend that the application of the new personnel rule retroactively constitutes a "taking" of her continued employment.

To establish a protected interest in continued employment, plaintiff must identify a state statutory or contractual right that was violated by her termination.  See <u>Orloff v Cleland</u>, 708 F2d 372 (9th Cir 1983).  In this case, plaintiff failed to plead adequately that she has a protected property interest in continued employment.  Plaintiff is a <u>temporary</u> subordinate judicial officer.  Doc #41 at 6-7 (emphasis added).  Based on the complaint, the fact that plaintiff submitted an application for a permanent position (id at 6) and because plaintiff failed to plead a state statutory or contractual right, the court concludes that plaintiff did not have a protected property interest in continued employment.

The court now turns to plaintiff's final federal constitutional argument:  that the new personnel policy is an "unlawful bill of attainder targeting plaintiff for punishment by

12

governmental action."  Doc #41 at 11.  Article I, section 9, paragraph 3 of the Constitution provides: "No Bill of Attainder or ex post facto Law will be passed."  A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial."  <u>Nixon v Administrator of General Services</u>, 433 US 425, 468 (1977).

In determining whether punishment is inflicted, the court has three inquiries, one of which is whether the legislative record evidences an intent to punish.  <u>Selective Service System v Minnesota Public Interest Research Group</u>, 468 US 841, 852 (1984).  Plaintiff cannot both argue that the decision to apply the policy retroactively is not legislative and therefore, not entitled to immunity and also argue it is legislative and therefore, is an unconstitutional bill of attainder.  Furthermore, pursuant to the January 26 order, plaintiff may not re-litigate any issue concerning the promulgation of the personnel rule at issue (Doc #34 at 20), including any alleged motivation underlying its promulgation.  Accordingly, the policy applied retroactively is not an unlawful bill of attainder.

B

Under 28 USC § 1367(a), supplemental jurisdiction is proper where the relationship between the federal and state law claims is such that they form "part of the same case or controversy under Article III of the United States Constitution."  Plaintiff's state constitutional claims involve a "common nucleus of operative fact" with her federal claims and would be expected to be resolved

13

in a single judicial proceeding. <u>United Mine Workers of America v Gibbs</u>, 383 US 715, 725 (1966).

Plaintiff claims that defendants violated her rights secured by the California Constitution, specifically, Article 1, section 2(a). Article 1, section 2(a) of the California Constitution states "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." As discussed <u>supra</u> regarding plaintiff's failure adequately to plead a violation of her First Amendment rights, plaintiff's state constitutional claim suffers from the same fatal defects. Plaintiff is unable to plead a state constitutional violation.

### III

Accordingly, the court GRANTS the motion to dismiss plaintiff's federal claims under 42 USC § 1983 and plaintiff's state constitutional claim with prejudice.

The clerk is directed to close the file and terminate all pending motions.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge